IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STACY STROZIER, on behalf of himself and all similarly situated individuals, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:12-CV-00330-AT |
| v. | : : | |
| E*TRADE FINANCIAL CORPORATION, | : : : | |
| Defendant. | : | |

# ORDER

This case brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") is before the Court on Defendants' Motion to Dismiss Complaint or, in the alternative, Motion to Compel Arbitration and Motion to Stay Proceedings [Doc. 5] and Motion to Stay Proceedings, Compel Individual Arbitration, and Strike Collective Allegations (hereinafter referred to as "Motion to Compel Arbitration") [Doc. 11].[1] The issue before the Court, whether an arbitration agreement that purports to waive an employee's right to bring a

---

[1] Defendant agrees that its Motion to Dismiss Complaint or, in the alternative, Motion to Compel Arbitration and Motion to Stay Proceedings [Doc. 5] is deemed **MOOT** as a result of Plaintiff's filing a First Amended Complaint [Doc. 8]. Additionally, the sole ground Defendant offers in support of striking the collective allegations in Plaintiff's Amended Complaint is the argument that because the arbitration agreement is silent on the issue of class arbitration, Plaintiff is not authorized to proceed with arbitration on a class-wide basis. It appears from Plaintiff's Response in Opposition to the Motion to Compel Arbitration that Plaintiff is not asserting the right to proceed to class arbitration, but argues instead that the agreement, which does not allow class arbitration, is itself unenforceable. Accordingly, the portion of Defendant's Motion [Doc. 11] seeking to strike Plaintiff's collective allegations is **DENIED**.

collective action is enforceable under the FLSA, is a topic of increased debate among federal district and appellate courts. The Court finds Plaintiff's argument that compelling individual arbitration violates Plaintiff's federal statutory rights under the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, and the FLSA, to be persuasive. However, as the Eleventh Circuit has upheld the enforceability of similar arbitration provisions in FLSA cases, albeit on different grounds than those presented in the instant case, the Court concludes that it must **GRANT** Defendants' Motion to Compel Arbitration [Doc. 11] and **DISMISS** the Complaint so as to permit the Court of Appeals itself to review the distinct issues presented here[2] more closely.

## I.    BACKGROUND

Plaintiff Stacy Strozier brought this putative FLSA collective action against Defendant alleging that he and other similarly situated current and former employees were required to work in excess of 40 hours per week without overtime pay.[3]   As a condition of his employment with Defendant, Plaintiff

---

[2] Contemporaneous with the instant Order, this Court has also granted a motion to compel arbitration in *Walthour v. Chipio Windshield Repair, LLC, et al*, No. 1:12-cv-1491-AT, another FLSA putative collection action currently before this Court involving the enforceability of an arbitration agreement containing a collective action waiver, and which discusses additional arguments offered in opposition of compelling mandatory arbitration. *See* Feb. 27, 2013 Order on Defendant's Joint Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Complaint or, Alternatively, Motion to Stay Proceedings (finding Plaintiff's arguments that the text, structure, and legislative history and policy considerations behind the FLSA demonstrate that Congress intended that the right to a collective action under the Act was a substantive right not subject to contractual waiver in an employment agreement).

[3] Four additional employees have filed notices of their consent to become party plaintiffs in this action.  (*See* Docs. 16, 20, 21, & 27.)

executed an offer letter which contains the following mandatory arbitration clause:

> In the event of any dispute or claim arising out of or relating to your employment relationship with the Company, this agreement, or the termination of your employment with the Company for any reason (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race, national origin, disability, religious or other discrimination, harassment or retaliation) (collectively referred to hereafter as "Disputes"), you and the Company agree that all such Disputes shall be fully, finally and exclusively resolved by binding arbitration to the fullest extent permitted by law. The arbitration will be conducted by the American Arbitration Association in [San Mateo County, California] or such other location that may be agreed to by you and the Company n writing. You and the Company hereby waive your respective rights to have any Disputes tried to a judge or jury . . .

(the "Arbitration Agreement") (Doc. 11-2 at 2.) Defendant seeks to compel arbitration of Plaintiff's FLSA claims pursuant to this Arbitration Agreement.

## II. ANALYSIS

Defendant asserts that Plaintiff's FLSA claim cannot be adjudicated in this Court because his employment agreement requires him to submit this dispute to binding arbitration. Notwithstanding Plaintiff's amending his Compliant to assert "collective action allegations," (Doc. 8 ¶¶ 17-29), Defendant further asserts that the Court must compel individual arbitration because the arbitration agreement is silent as to the parties' agreement to participate in class arbitration. Specifically, Defendants assert the following arguments in support of their Motion to Compel Arbitration:

(1) strong federal and state policies favor the enforcement of arbitration agreements generally,

(2) state and federal case law establish the validity and enforceability of the subject Arbitration Agreement which encompasses Plaintiff's FLSA claim, and

(3) federal case law mandates that courts enforce such agreements so as to effectuate the parties' intent.

In response, Plaintiff asserts that the Arbitration Agreement violates his substantive rights under the National Labor Relations Act ("NLRA") to engage in a collective action to pursue statutory remedies under the FLSA, and that the agreement is procedurally unconscionable. Defendant's Arbitration Agreement here requires its employees, as a condition of employment, to submit their claims to mandatory arbitration. Although the Arbitration Agreement does not contain an express class/collective action waiver, it nevertheless effectively requires the employees to give up their right to proceed collectively in any forum in light of the Supreme Court's decision in *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 130 S.Ct. 1758 (2010), as explained below.

The Court considers the enforceability of the Arbitration Agreement under the provisions of the Federal Arbitration Act, the Fair Labor Standards Act, and the relevant case law addressing mandatory arbitration agreements in the employment context below.

## A. Whether the Terms of the Arbitration Agreement Compel Individual Arbitration and Disallow Collective Arbitration

Although the Arbitration Agreement does not expressly waive the employee's right to proceed as a class in arbitration, the Supreme Court has held that a party to an arbitration agreement that is silent regarding class arbitration may not be compelled under the FAA to submit to arbitration on a class basis without their affirmative consent. *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1775 (2010). Thus, "where the arbitration agreement appears to be silent as to class arbitration, it is necessary to determine the parties' intent to authorize class proceedings." *Southern Communications Services, Inc. v. Thomas*, 829 F.Supp.2d 1324, at *1332-1333 (N.D. Ga. Nov. 3, 2011) (citing *Stolt–Nielsen*). Neither party here disputes that Defendant did not and does not agree to submit to class-wide arbitration. Accordingly, the Arbitration Agreement effectively waives Plaintiff's right to pursue collective arbitration.

## B. The Federal Arbitration Act

The validity of an arbitration agreement is generally governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, which was enacted in 1925 to reverse the longstanding judicial hostility to arbitration agreements and to place arbitration agreements upon the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). "The FAA embodies a liberal federal policy favoring arbitration agreements." *Caley*, 428 F.3d at 1367

(internal quotations omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The Supreme Court has long recognized the arbitrability of federal statutory claims, noting that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26.

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. An agreement to arbitrate federal statutory claims is generally enforceable unless "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26. Where such a Congressional intention exists, it may be shown by reference to the text of the statute, its legislative history, or "an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Id.* The burden is on the party opposing arbitration to show that Congress intended to preclude waiver of a judicial forum in favor of an arbitral forum for the statutory claims. *Id.* "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24-25.

## C.    The Fair Labor Standards Act

The FLSA was enacted as part of President Franklin D. Roosevelt's New Deal legislation in 1938.  According to the Supreme Court in *Brooklyn Sav. Bank v. O'Neil*, "the prime purpose of the [FLSA] was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." 324 U.S. 697, 707 n.18 (1945) (citing 81 Cong. Rec. 7652, 7672, 7885; 82 Cong. Rec. 1386, 1395, 1491, 1505, 1507; 83 Cong. Rec. 7283, 7298, 9260, 9265; H. Rep. No. 1452, 75th Cong., 1st Sess., p. 9; S. Rep. No. 884, 75th Cong., 1st Sess., pp. 3, 4), *reh'g denied,* 325 U.S. 893.  "The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce."  *Id.* at 706-707.

In order to effectuate the comprehensive remedial purposes of the FLSA, § 216(b) provides that any employer who violates the minimum wage and overtime provisions of the Act is liable to their employees for unpaid minimum wages or overtime compensation, additional liquidated damages, attorney's fees and expenses.  Employers are also subject to "equitable relief as may be appropriate to effectuate the purposes of [§] 215(a)(3) of this title, including without

limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

The FLSA further contains a "right of action" provision whereby employees may enforce the damages provision as follows:

> An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer . . . ***by any one or more employees for and in behalf of himself or themselves and other employees similarly situated***. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* (emphasis added). This collective action provision is referred to in the statute as a right in itself, not merely a procedural mechanism by which to enforce other rights established by Congress in the FLSA. *Id.* (stating that "[t]he right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action" terminates only if the Secretary of Labor brings its own complaint for violations of the FLSA under § 217 seeking payment of unpaid minimum wages or overtime compensation or under § 216(a) seeking legal or equitable relief for willful violations of § 215 sought as a result of alleged violations of § 215(a)(3) of the Act).

In *Hoffmann-La Roche Inc. v. Sperling*, the Supreme Court examined the legislative history behind the FLSA's collective action provision:

> In 1938, Congress gave employees and their "representatives" the right to bring actions to recover amounts due under the FLSA. No written consent requirement of joinder was specified by the statute.

> In enacting the Portal-to-Portal Act of 1947, Congress made certain changes in these procedures. In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added. *See* 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell) . . . . Congress left intact the "similarly situated" language providing for collective actions, such as this one.

493 U.S. at 173 (as incorporated into the Age Discrimination in Employment Act "ADEA") (emphasis added). The Court in *Hoffman* thus concluded that because "Congress left intact the "similarly situated" language providing for collective actions" in its amendments "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *Id.* The July 8, 1937 Senate Report from the Committee on Education and Labor regarding the FLSA states:

> The right of individual or collective employees to bargain with their employers concerning wages and hours is recognized and encouraged by this bill. It is not intended that this law shall invade the right of employer and employee to fix their own contracts of employment, wherever there can be any real, genuine bargaining between them.

75th Cong., 1st Sess., S. Rep. No. 884, p. 3. Pursuant to § 216(b) of the Act, Congress has stated its policy that FLSA plaintiffs should have the right to proceed collectively. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. at 173.

Moreover, both the Supreme Court and the Eleventh Circuit have held that permitting contractual waiver of the other rights and remedies provided alongside the collective action provision in § 216(b) – the right to minimum wage, overtime compensation, liquidated damages, and attorney's fees – would nullify

the purposes of the Act.[4]   *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. at 707 (addressing whether an employee's written waiver of rights under § 216 barred a subsequent action to recover statutory damages and reasoning that "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy"); *Silva v. Miller*, 307 F. App'x 349 (11th Cir. 2009) (holding that "FLSA provides for reasonable attorney's fees [and] the parties cannot contract in derogation of FLSA's provisions" even in a settlement agreement).   "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dept. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982) (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697.)   "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 740 (1981) (internal citations omitted)).

---

[4] The question of whether the statutory right to a collective action created by the FLSA may be waived in an arbitration agreement depends upon Congress's intent as evidenced by the Act. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. at 704-05 ("With respect to private rights created by a federal statute, such as Section 216(b), the question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute."); *Gilmer*, 500 U.S. at 26.  Where such a Congressional intention exists, it may be shown by reference to the text of the statute, its legislative history, or by a broader consideration of the legislative policy behind the provision as evidenced by its legislative history and the provisions in and structure of the Act.  *Id.* at 706; *Gilmer*, 500 U.S. at 26 (noting Congressional intent may also be shown by demonstrating "an 'inherent conflict' between arbitration and the [statute's] underlying purposes").

### D. Enforceability of the Arbitration Agreement

Notwithstanding the Supreme Court's long history of favoring employees' substantive rights under § 216(b) of the FLSA over the contractual rights of their employers, s*ee generally Barrentine*, 450 U.S. 728, Defendant is correct that the increasing trend of federal courts has been to uphold class/collective action waivers in mandatory arbitration agreements. Although neither the Supreme Court nor the Eleventh Circuit has squarely addressed the issue whether an employee's inability to proceed on a class or collective basis in arbitration prevents him from vindicating his substantive rights under the FLSA, precedent from both courts arguably control this Court's determination. *See Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1378 (11th Cir. 2005) (FLSA); *see also Gilmer*, 500 U.S. 20, 27-33 (ADEA).

In *Caley*, the Eleventh Circuit found that an arbitration agreement that precluded class actions in a case brought under the FLSA, the ADEA, and the Employee Retirement Income Security Act ("ERISA") was not unconscionable under Georgia contract law and was therefore enforceable. 428 F.3d at 1378. Following the Supreme Court's rationale in *Gilmer* that "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition,'" *Caley* held that the prohibition of class actions in an arbitration agreement was consistent with the FAA's goals. *Id.* (quoting *Gilmer*, 500 U.S. at 31). Although *Caley*, which was decided solely on state law grounds, did not determine whether the

right to proceed in a collective action was a non-waivable substantive right under the FLSA, it has been uniformly cited by the district courts in this circuit as binding authority for the proposition that FLSA class waivers in arbitration agreements are enforceable.  *See infra* at 15-16.

Defendant and the other courts addressing this issue rely on the Supreme Court's decision in *Gilmer* rejecting an argument similar to Plaintiffs' here in a case concerning the ADEA, which expressly adopts the FLSA collective action provision.  *Gilmer*, 500 U.S. 20.  *Gilmer* held that the compulsory arbitration of ADEA claims pursuant to arbitration agreements was not inconsistent with the statutory framework and purposes of the ADEA.  *Id.* at 27-33.  The *Gilmer* Court found no inherent conflict between the ADEA's goal of furthering important social policies and enforcing arbitration of the plaintiff's age discrimination claims.  *Id.* at 27-28 (noting previous holdings that claims under the Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933, all of which are designed to advance important public policies, are appropriate for arbitration).  "[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* at 28 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)).

In rejecting the plaintiffs' argument that compulsory arbitration was improper because it deprived claimants of the judicial forum provided for by the ADEA, the Supreme Court in *Gilmer* noted that "if Congress intended the

substantive protection afforded [by the ADEA] to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history." *Id.* at 29 (quoting *Mitsubishi*, 473 U.S. at 628). The plaintiff in *Gilmer* argued that compelling arbitration would violate the purposes of the ADEA because it would not allow for class actions. The *Gilmer* Court rejected the plaintiffs' argument – characterizing it as a challenge regarding the adequacy of the arbitration procedures as opposed to the violation of a substantive right – because a collective proceeding in arbitration was in fact available there. *Id.* at 30, 32 (noting that "the NYSE rules also provide for collective proceedings"). Nonetheless, the Court went on to state, as dicta, that

> even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.

*Id.* at 32 (quoting *Nicholson v. CPC Int'l Inc.*, 877 F.2d 221, 241 (3rd. Cir. 1989)).

Contrary to how it has sometimes been interpreted, *Gilmer* did not expressly decide whether the right to proceed collectively is a substantive right under the ADEA. *Gilmer* simply held that because "statutory claims may be the subject of an arbitration agreement," arbitration agreements may be enforceable "'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id.* at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. at 628). The Court in *Gilmer* concluded that there was no indication from the text or history of the ADEA that

Congress intended to afford substantive protection against the waiver of the right to a judicial forum in light of the ADEA's flexible approach to resolution of claims and the Equal Employment Opportunity Commission's informal methodology of out-of-court dispute resolution. *Id.* at 29. Thus, while *Gilmer* established that FLSA claims are arbitrable under the FAA in light of the strong federal policy favoring arbitration, the question whether the right to proceed collectively under the FLSA in either arbitration or a judicial forum may be waived remains undecided by the Supreme Court.

Nonetheless, every circuit court save one addressing the issue has held that plaintiffs' inability to proceed on a class or collective basis in arbitration does not prevent them from vindicating their substantive rights under the FLSA. *See Owens v. Bristol Care, Inc.,* 702 F.3d 1050 (8th Cir. Jan. 7, 2013) ("There is no inconsistency between either the FLSA text or its legislative history and the conclusion that arbitration agreements containing class waivers are enforceable in cases involving the FLSA."); *Carter v. Countrywide Credit Industries, Inc.,* 362 F.3d 294, 298 (5th Cir. 2004) (citing *Gilmer* and rejecting plaintiff's claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA); *Adkins v. Labor Ready, Inc.,* 303 F.3d 496 (4th Cir. 2002) (holding that where there is "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action" a plaintiff's "inability to bring a class action cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); *Horenstein v.*

*Mortgage Market, Inc.*, 9 F. App'x 618, 619 (9th Cir. 2001) ("Although plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the [FLSA]."). *But see Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007) (affirming district court's finding that class action waiver in arbitration agreement was unconscionable and contrary to the purpose of the FLSA).

Moreover, every other district court in this Circuit to have considered the issue has rejected the argument that the right to bring a collective action is a non-waivable substantive right under the FLSA. *See Zekri v. Macy's Retail Holdings, Inc.*, No. 1:10-CV-1740-MHS, 2010 WL 4660013 (N.D. Ga. Nov. 4, 2010) (Shoob, J.) (finding plaintiff's argument that right to FLSA collective action is substantive lacked any merit in light of Supreme Court, Eleventh Circuit, and other circuit court decisions upholding waiver of right to proceed in collective actions); *DeOliveira v. Citicorp N. Am., Inc.*, No. 8:12-CV-251-T-26TGW, 2012 WL 1831230 (M.D. Fla. May 18, 2012) (Lazzara, J.) (holding that Eleventh Circuit's decision in *Caley v. Gulfstream Aerospace Corp.* was binding on issue of enforceability of collective action waiver in arbitration agreement); *Slawienski v. Nephron Pharm. Corp.*, No. 1:10-CV-0460-JEC, 2010 WL 5186622, *2 (N.D. Ga. Dec. 9, 2011) (Carnes, J.) (granting motion to compel arbitration of plaintiffs' FLSA claims and noting that "[f]ollowing *Caley*, district courts in this circuit have routinely upheld class action waivers in the employment context"); *Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 10-22398-Civ.-UU, 2011 WL

6794438, *3-4 (S.D. Fla. Apr. 19, 2011) (Ungaro, J.) (noting that contractual waiver of right to participate in FLSA § 216(b) collective action was not substantively unconscionable because it prevented employee from engaging in "protected concerted activity" in violation of federal labor laws and holding that class action relief was not essential to the vindication of the substantive law at issue where plaintiff had the opportunity to litigate her individual claim for overtime under the FLSA); *Delano v. Mastec, Inc.*, No. 8:10-CV-320-T-27MAP, 2010 WL 4809081 (M.D. Fla. Nov. 18, 2010) (Whittemore, J.) (rejecting plaintiff's argument that provision waiving plaintiffs' right under 29 U.S.C. § 216(b) to pursue their FLSA claims in a collective action was unenforceable and compelling arbitration of plaintiffs' claims individually); *La Torre v. BFS Retail & Commercial Operations, LLC*, No. 08-22046-CIV, 2008 WL 5156301 (S.D. Fla. Dec. 8, 2008) (O'Sullivan, J.) (applying *Caley* and holding that arbitration provision that purportedly precluded participation in class action under FLSA was not substantively unconscionable).

In support of his primary argument that Defendant's Arbitration Agreement is unenforceable because it requires employees, as a mandatory condition of employment, to waive the right to bring a class action, Plaintiff relies exclusively on the National Labor Relation Board's ("NLRB") recent decision in *In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012). Although the NLRB's decision in *In re D.R. Horton* was decided under the National Labor Relations Act ("NLRA") and not the FLSA, the Court finds it

persuasive nonetheless.[5]  The Board in *In re D.R. Horton* found that requiring an employee to sign an agreement that precludes him from filing collective claims addressing wages, hours, or other working conditions in either a judicial or arbitral forum as a condition of employment unlawfully restricts the employee's right to engage in concerted action for mutual aid and protection under the NLRA,[6] as may be enforced pursuant to § 216(b) of the FLSA.  *Id.*  While this Court recognizes that the decision in *In re D.R. Horton* is only persuasive, it nonetheless provides a comprehensive and well reasoned analysis of the federal labor laws and the Supreme Court's interpretations of those laws in support of its decision.

The facts in *In re D.R. Horton* are as follows:  In 2006, D.R. Horton began to require each new and current employee to execute a mutual arbitration agreement as a condition of employment.  357 NLRB NO. 184, at 1.  After signing the arbitration agreement, Michael Cuda, notified D.R. Horton in 2008 of his intention to participate in a nationwide class arbitration against D.R. Horton for misclassification of superintendents as exempt employees under the FLSA.  *Id.*

---

[5] Although the validity of the NLRB's order in *D.R. Horton* is in question in light of the decision of the United States Court of Appeals for the District of Columbia in *Canning v. NLRB*, No. 12-1115 (Jan. 25, 2013), the Board's reasoning nonetheless is persuasive.  As this Court is not relying on the NLRB's decision in *D.R. Horton* as binding, the *Canning* Court's holding that the Board lacked authority to act for want of a quorum where three members of the five-member were never validly appointed because they took office under putative recess appointments that were made when the Senate was not in recess is irrelevant here.

[6] Section 7 of the NLRA provides employees the right to engage in "protected concerted activity" in order to improve their pay and working conditions.  *See* 29 U.S.C.S. § 157.  Section 8(a)(1) of the NLRA additionally provides that "it shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S.C.S. § 158.

D.R. Horton responded that the arbitration agreement barred arbitration of collective claims and Cuda filed an unfair labor practice charge with the NLRB for violations of Section 8(a)(1) of the NLRA. *Id.*

The Board held that the class-action waiver in the arbitration agreement violated Section 8(a)(1) of the NLRA by impinging on the substantive rights afforded to employees in Section 7 based on an analysis of the text and purpose of the NLRA as demonstrated by Supreme Court and NLRB precedent. *Id.* First, the Board recognized that the Supreme Court has held that "Section 7 'protects employees from retaliation by the employers when they seek to improve their working conditions through resort to administrative and judicial forums" including resort to arbitration. *Id.* (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-66 (1978)). The Board then noted that it has consistently been held that "concerted legal activity addressing wages, hours or working conditions is protected by Section 7," and that "collective pursuit of a workplace grievance in arbitration is equally protected." *Id.* at 2-3 (citing cases). Indeed, numerous courts have held that the filing of a lawsuit by a group of employees to achieve more favorable terms or conditions of employment constitutes protected "concerted activity" under the NLRA. *Id.* at 2 (citing *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565-66 (1978); *Brady v. National Football League*, 644 F.3d 661, 673 (8th Cir. 2011); *Mohave Elec. Co-op, Inc. v. NLRB*, 206 F.3d 1183, 1188 (D.C. Cir. 2000)). *See also Spandsco Oil & Royalty Co.*, 42 NLRB 942, 948-949 (1942) (NLRB holding that the filing of a Fair Labor Standards Act suit by three

employees was protected concerted activity). "Thus, employees who join together to bring employment-related claims on a classwide or collective basis in court or before an arbitrator are exercising rights protected by Section 7 of the NLRA." *Id.* at \*3.

Second, the Board in *In re D.R. Horton* explained that the ability of an individual employee to file a collective action to redress workplace wrongs or improve workplace conditions is central to the purposes of the NLRA aimed at preventing employers from imposing contracts on individual employees requiring that they agree to forego engaging in concerted activity. *Id.* at \*3-5. Indeed, Congress enacted the NLRA to redress "[t]he inequality of bargaining power between employees who do not possess full freedom of association ... and employers who are organized in the corporate form or other forms of ownership association." 29 U.S.C. § 151. "Congress vested employees with 'full freedom of association ... for the purpose of ... mutual aid or protection,' in order to redress that inequality. Both the Board and the courts have recognized that collective enforcement of legal rights in court or arbitration serves that congressional purpose." *In re D.R. Horton*, 357 NLRB 184, at \*3. Thus, the Board found that a single employee who files a collective action pursuant to Section 216(b) of the FLSA regarding wages, hours or working conditions, whether in court or before an arbitrator, clearly engages in conduct protected by Section 7 of the NLRA. *Id.* at \*4.

> These forms of collective efforts to redress workplace wrongs or improve workplace conditions are at the core of what Congress intended to protect by adopting the broad language of Section 7. Such conduct is not peripheral but central to the Act's purposes . . . . To hold otherwise, the Supreme Court recognized in *Eastex*, "could 'frustrate the policy of the Act to protect the right of workers to act together to better their working conditions.'" 437 U.S. at 567 (quoting *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14 (1962)).

*Id.*

Third, the Board addressed the interplay between Sections 7 and 8 of the

NLRA, and held that

> [J]ust as the substantive right to engage in concerted activity aimed at improving wages, hours or working conditions through litigation or arbitration lies at the core of the rights protected by Section 7, the prohibition of individual agreements imposed on employees as a means of requiring that they waive their right to engage in protected, concerted activity lies at the core of the prohibitions contained in Section 8.

*Id.* at *7. In so holding, the Board relied on the social and political history

surrounding the origin of NLRA Section 7 rights, including broader

considerations of Federal labor policies against "yellow dog"-like contracts, that

might be deemed in historical context comparable to the mandatory arbitration

agreement at issue before the Court. *Id.* Thus, the Board declared that

employers cannot enter into individual agreements with employees in which the

employees cede their statutory rights to act collectively, including the right to

proceed collectively to resolve employment disputes in arbitration. *Id.* at *6

(citing *J. I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944) (holding that "[w]herever

private contracts conflict with [the Board's] functions [of preventing unfair labor

practices], they obviously must yield or the Act would be reduced to a futility"), *NLRB v. Stone*, 125 F.2d 752, 756 (7th Cir. 1942) (affirming Board's determination as unlawful an employment contract clause that required employees to attempt to resolve employment disputes individually with the employer and then provided for arbitration and describing the contract clause as a per se violation of the Act, even if "entered into without coercion," because it "obligated [the employee] to bargain individually" and was a "restraint upon collective action").

Fourth, the Board found that there is no conflict between the NLRA and the FAA. *Id.* at *10 (citing *Southern Steamship Co. v. NLRB*, 316 U.S. 31, 47 (1942) (holding that where a possible conflict exists, the Board is required, when possible, to undertake a "careful accommodation" of the two statutes), *Morton v. Mancari*, 417 U.S. 535, 551 (1974) (holding that when two federal statutes "are capable of co-existence," both should be given effect "absent a clearly expressed congressional intention to the contrary")). The Board analyzed the policies underlying both the NLRA and the FAA, in light of the Supreme Court's clear directive that a private contract that conflicts with the purpose of the NLRA "must yield or the Act would be reduced to a futility." *Id.* at *11 (citing *J. I. Case Co*, 321 U.S. at 337). Recognizing that the purpose of the FAA was to prevent courts from treating arbitration agreements less favorably than other private contracts, the Board reasoned that

> To find that an arbitration agreement must yield to the NLRA is to treat it no worse than any other private contract that conflicts with Federal labor law. The MAA would equally violate the NLRA if it said nothing about arbitration, but merely required employees, as a condition of employment, to agree to pursue any claims in court against the Respondent solely on an individual basis. It is thus clear that our holding, that the MAA conflicts with the NLRA, does not rest on "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility v. Concepcion*, 131 S.Ct. 1740, 1746 (2011).

*Id.*

Moreover, the Board looked to the Supreme Court's jurisprudence under the FAA in *Gilmer v. Interstate/Johnson Lane Corp.,* permitting enforcement of agreements to arbitrate federal statutory claims, including employment claims, as making clear that the arbitration agreement may not require a party to "forgo the substantive rights afforded by the statute." *Id.* at *12 (citing *Gilmer*, 500 U.S. at 26). The Board rejected the argument that the right to bring a collective action was procedural rather than substantive, and held that "[t]he right to engage in collective action — including collective *legal* action — is the core substantive right protected by the NLRA [and] is the foundation on which the Act and Federal labor policy rest." *Id.* at *12. In so holding, the Board expressly recognized that the right to act concertedly by invoking § 216(b) of the FLSA is not merely a procedural right ancillary to the litigation of substantive claims. *Id.*

Finally, the Board concluded that the Supreme Court's restriction on compelling class arbitration in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*[7], and

---

[7] In *Stolt-Nielsen*, the Court held that an arbitration panel exceeded its authority by permitting a class antitrust claim when the commercial shipping charter agreement's arbitration clause was

*AT&T Mobility v. Concepcion*[8], was not implicated by its decision as neither case involved the waiver of rights protected by the NLRA. *Id.* at \*16 (stating "nothing in our holding here requires the Respondent or any other employer to permit, participate in, or be bound by a class-wide or collective arbitration proceeding.") The Board's decision was not a blanket mandate for class arbitration in order to protect employees' rights under the NLRA. *Id.* Rather, the Board "only" held that

> employers may not compel employees to waive their NLRA right to collectively pursue litigation of employment claims in all forums, arbitral and judicial. So long as the employer leaves open a judicial forum for class and collective claims, employees' NLRA rights are preserved without requiring the availability of classwide arbitration. Employers remain free to insist that arbitral proceedings be conducted on an individual basis.

*Id.*

Defendant here challenges the applicability of the NLRB's decision in *In re D.R. Horton* because (1) the case at bar does not involve an express written waiver of collective arbitration similar to the waiver at issue in *In re D.R. Horton*; (2) the NLRB's opinions are not binding on federal courts; (3) the Court is not bound to follow the NLRB's decision; (4) several other courts have declined to follow the NLRB's decision in *In re D.R. Horton*[9]; and (5) plaintiff's rights under

---

silent on the issue of class arbitration and the panel relied on policy considerations beyond the scope of the contract and applicable law as the principal basis of its decision. 130 S.Ct. 1758, 1775-1776 (2010).

[8] In *AT&T Mobility v. Concepcion*, the Court found that a claim that class-action waiver in a consumer arbitration agreement was unconscionable under state law was preempted by FAA. 131 S.Ct. 1740, 1751-1753 (2011).

[9] The district courts are divided as to the impact of *In re D.R. Horton* on the issue before the Court. *Compare, e.g., Jasso v. Money Mart Express, Inc.*, 879 F.Supp.2d 1038, No. 11–CV–

the NLRA are not implicated by a claim under the FLSA. This Court acknowledges that the NLRB's decision in *In re D.R. Horton*[10] is not binding and that the case at bar is not a suit involving a labor dispute under the NLRA. However, as explained above, this Court finds the Board's well reasoned and thorough analysis of the issue of employees' rights under Federal labor laws to be most persuasive in light of the interplay between the NLRA and the FLSA. The persuasive value of *In re D.R. Horton* is not diminished by the fact that this case involves an effective waiver of the right to collective arbitration rather than an express waiver. *See In re D.R. Horton*, 357 NLRB No. 184, at *4 (treating the arbitration agreement as any other unilateral workplace rule and stating that "if the rule does not explicitly restrict protected activity, the finding of a violation is dependent upon a showing [that] the rule has been applied to restrict the exercise of Section 7 rights").

As the Eleventh Circuit aptly noted in *Patel v. Quality Inn South*, Congress enacted the FLSA and the NLRA in the same unique era, and the statutes seek to

---

5500 YGR, 2012 WL 1309171 (N.D.Cal. 13 Apr. 2012), and *De Oliveira v. Citicorp North America, Inc.*, No. 8:12–cv–251–T–26TGW, 2012 WL 1831230 (M.D.Fla. 18 May 2012) (both declining to follow *In re D.R. Horton* ), with, e.g., *Owen v. Bristol Care, Inc.*, No. 11–04258– CV–FJG, 2012 WL 1192005 (W.D.Mo. 28 Feb. 2012), and Herrington v. Waterstone Mortg. Corp., No. 11–cv–779–bbc, 2012 WL 1242318 (W.D.Wis. 16 Mar. 2012) (both following *In re D.R. Horton* ). *See also Tenet HealthSystem Philadelphia, Inc. v. Rooney*, 2012 WL 3550496 (E.D.Pa. Aug.17, 2012) (granting motion to confirm arbitration award where employee failed to meet burden to demonstrate *In re D.R. Horton* to be controlling law because although the NLRB's construction of the NLRA is entitled to deference, the NLRB has no special competence or experience interpreting the FAA).

[10] The decision is currently on appeal to the Fifth Circuit. *See D.R. Horton, Inc. v. National Labor Relations Board*, No. 12–60031 (5th Cir. filed Jan. 13, 2012).

advance similar goals in providing for minimum employee protections in the workplace:

> Congress enacted both the FLSA and the NLRA as part of the social legislation of the 1930's. The two acts have similar objectives . . . and courts frequently look to decisions under the NLRA when defining the FLSA's coverage. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 723, 67 S.Ct. 1473, 1473, 91 L.Ed. 1772 (1947); *see Marshall v. Abbott Farms, Inc.*, 559 F.2d 1006, 1007 & n. 1 (5th Cir. 1977).

846 F.2d 700, 703 (11th Cir. 1988) (holding that undocumented alien was employee within the meaning of the FLSA and as such could bring for unpaid wages and liquidated damages). The goal of both the NLRA and the FLSA is to improve working conditions of the country's workforce to ensure a healthy national economy. The NLRA employs the protection of collective employee action and bargaining to achieve this goal, while the FLSA relies on legislatively imposed standards, including the right to collective legal action to enforce those standards. Accordingly, the Court finds that the Board's discussion of the rights under the NLRA, including the right to a FLSA Section 216(b) collective action proceeding to advance those rights, informs this Court's analysis of the nature of the right to proceed collectively as a substantive right integral to the purpose of the FLSA. Plaintiff's reliance on *In re D.R. Horton* is therefore not misplaced as Defendant suggests.

Moreover, the Court finds that additional persuasive authority exists to support Plaintiffs' argument that the right to participate in a FLSA collective action is substantive rather than merely procedural as set forth fully in the

Court's contemporaneous order granting a motion to compel arbitration in *Walthour v. Chipio Windshield Repair, LLC, et al,* No. 1:12-cv-1491-AT.[11] *Waltour*, another FLSA putative collection action currently before this Court, also involves the enforceability of an arbitration agreement containing a collective action waiver. *See* Feb. 27, 2013 Order on Defendant's Joint Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' Complaint or, Alternatively, Motion to Stay Proceedings (finding Plaintiff's arguments that the text, structure, and legislative history and policy considerations behind the FLSA indicate that Congress intended that the right to a collective action under the Act was a substantive right not subject to contractual waiver in an employment agreement); *see also Skirchak,* 432 F. Supp. 2d 175, 179 (D. Mass. 2006), *aff'd and remanded,* 508 F.3d 49, 62 (1st Cir. 2007)[12]; *In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012); *Chen–Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394 (S.D.N.Y. 2011); *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011); *Sutherland v. Ernst & Young LLP*, 847 F. Supp. 2d 528

---

[11] Plaintiffs' additional arguments that the arbitration agreement is procedurally unconscionable and unduly burdensome are unpersuasive. First, Plaintiff's assertion that the mandatory arbitration provision is procedurally unconscionable because he lacked bargaining power and was forced into a "take it or leave it" situation in light of the current job market and economic downturn is specious. Although Plaintiff may indeed have been faced with a "take it or leave it" situation at E*Trade, he accepted his job with the company in 2005 prior to the current economic crisis that began in 2007 and may well have had other job options. Second, Plaintiff's argument that he will be unduly burdened if forced to arbitrate in California ignores the fact that Defendant has agreed to arbitrate Plaintiff's claims in Georgia.

[12] In *Skirchak*, the First Circuit recognized "that there is a policy debate about whether class action waivers essentially act as exculpatory clauses, allowing for violations of laws where individual cases involve low dollar amounts and so will not adequately address or prevent illegality." However, the *Skirchak* Court declined to decide "whether waivers of class actions under the FLSA are inherently unfair or unenforceable," but stated that in its view the FLSA statutorily created an interest in class actions. 508 F.3d at 60, 62.

(S.D.N.Y. 2011); *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 922-23 (M.D. Tenn. 2003) (finding that arbitration agreement which, among other things, did not contain provision allowing class actions was not enforceable because it would not effectively vindicate employee's statutory rights under the FLSA). *See also Delano*, 2010 WL 4809081, at *4 ("An arbitration agreement precluding class arbitration, whether expressly or impliedly, may be unenforceable if it effectively prevents claimants from vindicating their statutory rights in the arbitral forum. Accordingly, courts have invalidated class action waivers where plaintiffs demonstrated that their inability to pursue arbitration on a class basis would be tantamount to an inability to assert their claims at all.")

In sum, the Court finds persuasive authority to support Plaintiffs' assertion here that the right to proceed collectively, either in a judicial forum or in arbitration, is a substantive right afforded by the FLSA. However, there are also requisite grounds for enforcing the Arbitration Agreement at issue in this case in light of the trend in the Eleventh Circuit to uphold class waivers in employment agreements and the strong presumption in favor of arbitration. Thus, while the Court itself doubts that the Arbitration Agreement is enforceable in light of the effective waiver of the Plaintiffs' right to collective action under the FLSA in *any* forum, in the absence of binding precedent holding that such a provision is unenforceable as a matter of law, the Court in an exercise of prudence will require that the parties proceed to arbitration pursuant to the provisions of the FAA. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24-25 ("The

Arbitration Act establishes that, as a matter of federal law, ***any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration***, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.") (emphasis added). Until either the Supreme Court or the Eleventh Circuit put to rest the question of whether a collective action is a substantive right under the FLSA which cannot be contractually waived by an employer, this Court must order such claims to mandatory arbitration.

## III. CONCLUSION

Accordingly, Defendants' Motion to Compel Arbitration [Doc. 11] is **GRANTED**.[13] The Court declines to stay the case pending arbitration and instead **DISMISSES WITHOUT PREJUDICE** Plaintiff's Amended Complaint. In the event court action is necessary to resolve issues arising out of the arbitration pursuant to 9 U.S.C. § 3, the parties may file a separate civil action. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 27th day of February, 2013.


_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**

---

[13] Defendant's Motion for Leave to File Supplemental Brief [Doc. 24] is **GRANTED NUNC PRO TUNC**.